# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF KENTUCKY
# LOUISVILLE DIVISION

| | |
|---|---|
| COMMONWEALTH OF KENTUCKY *ex rel.* ANDY BESHEAR, ATTORNEY GENERAL,<br><br>Plaintiff,<br><br>v.<br><br>CARDINAL HEALTH 5, LLC; CARDINAL HEALTH 100, INC.; CARDINAL HEALTH 108, LLC; CARDINAL HEALTH 110, LLC; CARDINAL HEALTH 113, LLC; CARDINAL HEALTH 132, LLC; CARDINAL HEALTH 200, LLC; CARDINAL HEALTH 414, LLC; AND THE HARVARD DRUG COMPANY, LLC, D/B/A MAJOR PHARMACEUTICALS, D/B/A RUGBY LABORATORIES<br><br>Defendants. | CIVIL ACTION NO.   3:18-cv-184-DJH<br>**(Removal from Commonwealth of Kentucky, Jefferson Circuit Court, Civil Action No. 18-CI-001013)** |

## NOTICE OF REMOVAL

PLEASE TAKE NOTICE that, pursuant to 28 U.S.C. §§ 1331, 1441, 1446, and 1367, Defendants Cardinal Health 5, LLC; Cardinal Health 100, Inc.; Cardinal Health 108, LLC; Cardinal Health 110, LLC; Cardinal Health 113, LLC; Cardinal Health 132, LLC; Cardinal Health 200, LLC; Cardinal Health 414, LLC; and The Harvard Drug Company, LLC, d/b/a Major Pharmaceuticals, d/b/a Rugby Laboratories (collectively, "Cardinal Health"), by counsel, have removed the above-captioned action from the Jefferson Circuit Court, Jefferson County,

1

Kentucky, to the United States District Court for the Western District of Kentucky. As grounds for removal, Cardinal Health states as follows:

## I. NATURE OF THE REMOVED ACTION

1. On February 19, 2018, the Attorney General of the Commonwealth of Kentucky (the "KYAG") filed a Complaint on behalf of the Commonwealth of Kentucky ("Plaintiff") against Cardinal Health in the Jefferson Circuit Court, Jefferson County, Kentucky, captioned *Commonwealth of Kentucky,* ex rel. *Andy Beshear, Attorney General v. Cardinal Health 5, LLC; Cardinal Health 100, Inc.; Cardinal Health 108, LLC; Cardinal Health 110, LLC; Cardinal Health 113, LLC; Cardinal Health 132, LLC; Cardinal Health 200, LLC; Cardinal Health 414, LLC; and The Harvard Drug Company, LLC, d/b/a Major Pharmaceuticals, d/b/a Rugby Laboratories* (the "Complaint"). The court assigned the case Civil Action No. 18-CI-001013.

2. Plaintiff complains of over-distribution of prescription opioids into Kentucky. Plaintiff pleads that Cardinal Health "distributed oxycodone and hydrocodone, among other opioids, in the Commonwealth of Kentucky between January 1, 2007 and December 31, 2016." Complaint ("Compl.") ¶ 25. Plaintiff further pleads that Cardinal Health "has and does transact business from its Louisville locations, and/or solicited business in the Commonwealth." *Id.* ¶ 28.

3. The Complaint asserts nine counts: Consumer Protection Act Violation (Count I); Public Nuisance (Count II); Breach of Statutory Duties/Negligence Per Se (Count III); Negligence (Count IV); Unjust Enrichment (Count V); Fraud by Omission (Count VI); Medicaid Fraud KRS Chapter 205 (Count VII); Medicaid Fraud KRS Chapter 194A (Count VIII); and Punitive Damages (Count IX). Plaintiff seeks declaratory, injunctive, and compensatory relief. *See* Compl., Prayer for Relief, at 44–46.

4.  Although Plaintiff disavows stating a federal question, *id.* ¶ 30, Plaintiff pleads, *inter alia*, that the "'closed' chain of distribution" under which Cardinal Health operates "was specifically designed by Congress to prevent the type of diversion and abuse that is complained of herein," *id.* ¶ 48. Plaintiff thus pleads that its claims are based on alleged violations of federal law—the federal Controlled Substances Act.

5.  Cardinal Health has not responded to the Complaint in state court. Cardinal Health's response is due on April 13, 2018, pursuant to a stipulation between Cardinal Health and Plaintiff that was filed in the Jefferson Circuit Court.

6.  On December 5, 2017, the Judicial Panel on Multidistrict Litigation (JPML) formed a multidistrict litigation (MDL) and transferred opioid-related actions to Judge Dan Aaron Polster in the Northern District of Ohio pursuant to 28 U.S.C. § 1407. *See In re Nat'l Prescription Opioid Litig.*, MDL No. 2804 (Sept. 25, 2017), Dkt. #328. Cardinal Health intends to tag this case immediately for transfer to the MDL.

7.  In accordance with 28 U.S.C. § 1446(a), copies of the docket sheet and a copy of all process, pleadings, and orders served upon Cardinal Health in the state court action are attached hereto as **Exhibit A.**

## II. TIMELINESS OF REMOVAL

8.  The KYAG served the Complaint on Cardinal Health via its registered agent for service of process on February 22, 2018. In accordance with the requirements of 28 U.S.C. § 1446(b), this notice of removal is timely filed within thirty (30) days after service of Plaintiff's Complaint upon Cardinal Health.

### III. PROPRIETY OF VENUE

9. Venue is proper in this district and division under 28 U.S.C. § 1441(a) because the state court where the suit has been pending is located in this district and this division.

### IV. BASIS OF REMOVAL

10. Removal of this case is proper pursuant to 28 U.S.C. §§ 1441 and 1331 because Plaintiff's claims present a federal question under the federal Controlled Substances Act, 21 U.S.C. §§ 801, *et seq* ("CSA").

**A. Plaintiff's Claims Facially Arise Under Federal Law.**

11. The original jurisdiction of the district courts includes jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "Whether a case 'arises under' federal law for purposes of § 1331" is governed by the "well-pleaded complaint rule." *Holmes Grp., Inc. v. Vornado Air Circulation Sys.*, 535 U.S. 826, 830 (2002).

12. Federal jurisdiction exists when a federal question is presented "on the face of the plaintiff's properly pleaded complaint." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987); *see Loftus v. UPS*, 342 F.3d 509, 514 (6th Cir. 2003).

13. "[T]he party who brings the suit is master to decide what law he will rely upon." *The Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22, 25 (1913). In this case, Plaintiff has decided to rely upon federal law.

14. Plaintiff pleads that Cardinal Health allegedly violated federal law with, *inter alia*, the following allegations:

4

a. "[A] sophisticated, closed distribution system exists to push the drugs across the nation.  This sophisticated system, born out of an acknowledgement by Congress that greater control was needed over abused and addictive prescription drugs, is intended to track and account for controlled substances from manufacturing to the ultimate consumer." Compl. ¶ 47;

b. "This 'closed' chain of distribution was specifically designed by Congress to prevent the diversion and abuse that is complained of herein." *Id.* ¶ 48;

c. "This closed-system of state and federal authority imposes specific duties upon wholesale distributors to monitor, identify, halt, and perhaps most importantly, report suspicious orders of controlled substances.  21 C.F.R. § 1301; *Masters Pharm., Inc. v. Drug Enf't Admin.*, 861 F.3d 206 (D.C. Cir. 2017)." *Id.* ¶ 50 (citing only federal law);

d. "All registrants of the closed distribution system 'must adhere to specific security, recordkeeping, monitoring, and reporting requirements that are designed to identify or prevent diversion." *Id.* (citing statement by Deputy Assistant Administrator, Drug Enforcement Agency to the Department of Justice, before the Caucus on International Narcotics Control, United States Senate);

e. "Defendant Cardinal had a legal duty to ensure they were not filling suspicious orders that should simply have been refused. . . . Defendant did not refuse to ship or supply the often abused and highly addictive prescription opioids to Kentucky pharmacies, between 2010 and the present." *Id.* ¶ 77 (referring to legal duty arising only under federal law, *see Masters*, 861 F.3d at 212–13 (citing *In re Southwood Pharm., Inc. Revocation of Registration*, 72 Fed. Reg. 36,487, 36,501 (DEA July 3, 2007)));

    f. "Additionally, Defendant Cardinal knowingly failed to report suspicious orders in Kentucky from 2010 to the present." *Id.* ¶ 78 (referring to legal duty arising only under federal law); and

    g. "Specifically, Defendant Cardinal shipped millions of doses of highly addictive controlled painkillers into Kentucky, many of which should have been stopped and/or investigated as suspicious orders." *Id.* ¶ 84 (referring to legal duty arising only under federal law).

15. Plaintiff does not identify a state law source for a requirement that wholesale pharmaceutical distributors identify and report suspicious orders of controlled substances to a Kentucky governmental official or entity, or a state law source for a requirement that wholesale pharmaceutical distributors "halt," "refuse," or "stop and/or investigate[]" suspicious orders of controlled substances from registered pharmacies.

16. Plaintiff thus asserts claims based on Cardinal Health's violations of legal duties that arise only under the federal CSA and its implementing regulations with, *inter alia*, the following allegations:

    a. "Defendant Cardinal failed and/or refused to comply with the Controlled Substances Acts and the reporting requirements imposed therein by wholly failing to report facially suspicious orders and failing to halt distribution when appropriate." Compl. ¶ 114 (Count I).[1]  Additionally, "Defendant Cardinal

---

[1] Because Plaintiff identifies no provision of the Kentucky Controlled Substances Act or its implementing regulations containing any requirement analogous to the federal CSA's Reporting Requirement or the DEA's Shipping Requirement, *see Masters*, 861 F.3d at 212–13, Plaintiff's references in its claims to "Controlled Substances Acts" (plural) and to "state law" are surplusage.

        shipped drugs into the Commonwealth without adequate policies or procedures in place to detect suspicious orders." *Id.* ¶ 115 (Count I).

   b. "Defendant Cardinal intentionally and/or unlawfully failed to maintain effective controls against diversion through proper monitoring, distributing opioids without reporting, and refusing to fail to fill suspicious orders." *Id.* ¶ 126 (Count II).

   c. "Defendant Cardinal was under a duty required by law, to disclose or report orders of unusual size, orders deviating substantially from a normal pattern, or orders of unusual frequency," and "Defendant Cardinal failed to provide the aforementioned reporting required by law. . . . Further, Defendant Cardinal admitted to prior violations of the federal Controlled Substances Act." *Id.* ¶¶ 167–68, 170 (Count VI).

   d. "Defendant Cardinal through its duty to identify and track suspicious orders of prescription drugs, knew or should have known that, as a natural consequence of its actions, the Commonwealth would necessarily be paying for prescription opioids that were improperly diverted for non-medically necessary and improper abuse . . . Defendant Cardinal's misrepresentations were material because if the Commonwealth had knowledge of Defendant Cardinal's failure to comply with state and federal law, Defendant Cardinal's license to distribute opioids would have been suspended or not renewed, and, pursuant to both state and federal law, said shipments would not have been made by Defendant." *Id.* ¶¶ 179–80 (Count VII).

17.    In summary, Plaintiff facially pleads that at least Counts I, II, VI, and VII are based on alleged violations of "federal law"—namely, the federal "Controlled Substances Act."

18. A plaintiff is indeed the master of his complaint, and he "may avoid federal jurisdiction by *exclusive* reliance on state law." *Caterpillar*, 482 U.S. at 392 (emphasis added). Here, Plaintiff chose to explicitly allege violations of federal law as the basis for at least four counts. Counts I, II, VI, and VII of the Complaint thus plead a federal question. *Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804, 808 (1986) (the "suit arises under the law that creates the cause of action").

19. As discussed below, this federal law is a necessary, disputed, and substantial element of all Plaintiff's claims and thus presents a substantial federal question, whether or not Plaintiff had specifically pleaded that it seeks to apply and enforce the federal Controlled Substances Act. In Counts I, II, VI, and VII, however, federal law is presented "on the face of [Plaintiff's] properly pleaded complaint." *Caterpillar, Inc.*, 482 U.S. at 392; *see Lontz v. Tharp*, 413 F.3d 435, 439 (4th Cir. 2005) (removal "is appropriate if the face of the complaint raises a federal question") (citations omitted); *Loftis,* 342 F.3d at 514.

20. Furthermore, it is not necessary for federal jurisdiction that Cardinal Health establish that all of Plaintiff's nine counts raise a federal question. Even if Plaintiff could prove one or more of its nine counts against Cardinal Health without establishing a violation of federal law, this Court still has federal-question jurisdiction. "Nothing in the jurisdictional statutes suggests that the presence of related state law claims somehow alters the fact that [the] complaints, by virtue of their federal claims, were 'civil actions' within the federal courts' 'original jurisdiction.'" *City of Chicago*, 522 U.S. 156, 166 (1997).

21. Because the Court has original jurisdiction over Counts I, II, VI, and VII, it has supplemental jurisdiction over Plaintiff's other five counts, which are so related that they "form part of the same case or controversy." 28 U.S.C. § 1367(a).

### B. Plaintiff's Claims Depend on a Substantial Question of Federal Law.

22.     Even when state law creates the causes of action, a complaint may raise a substantial question of federal law sufficient to warrant removal if "the vindication of a right under state law necessarily turn[s] on some construction of federal law." *Merrell Dow*, 478 U.S. at 808-809; *see Gully v. First Nat'l Bank*, 299 U.S. 109, 112 (1936) ("To bring a case within [§ 1441], a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action.").

23.     "[F]ederal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013) (quotation marks omitted); *see Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 315 (2005); *Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 568 (6th Cir. 2007). "Where all four of these requirements are met . . . jurisdiction is proper because there is a 'serious federal interest in claiming the advantages thought to be inherent in a federal forum,' which can be vindicated without disrupting Congress's intended division of labor between state and federal courts." *Gunn*, 568 U.S. at 258.

24.     As set forth below, all four requirements are met in this case. Although some of Plaintiff's theories of recovery against Cardinal Health ostensibly are pleaded as state law claims, the underlying theory of liability is expressly premised on Cardinal Health's alleged violations of federal law or alleged duties arising out of federal law, specifically the federal Controlled Substances Act. Cardinal Health lawfully distributes prescription opioids to registered pharmacies in the Commonwealth of Kentucky. But Plaintiff now complains that Cardinal Health has distributed ***too many*** prescription opioids to those pharmacies. *See, e.g.*,

9

Compl. ¶ 2. Those claims entirely depend on Plaintiff's allegation that some portion of Cardinal Health's lawful shipments contained "'suspicious orders'" that Cardinal Health purportedly had a duty to identify, report (to federal authorities), and then not ship. *See id.*

25.  The source of the asserted legal duty to monitor and report suspicious orders of controlled substances is the federal CSA, 21 U.S.C. §§ 801, *et. seq.*, and its implementing regulations. *See* 21 C.F.R. § 1301.74; Compl. ¶ 50 (citing only 21 C.F.R. § 1301.74 and *Masters Pharm., Inc. v. Drug Enf't Admin.*, 861 F.3d 206 (D.C. Cir. 2017) as basis for alleged requirement to "identify . . . and, perhaps most importantly, report suspicious orders of controlled substances").

26.  The source of the asserted legal duty to suspend shipments of suspicious orders is 21 U.S.C. § 823(b) and (e), as interpreted by the Drug Enforcement Administration ("DEA") of the United States Department of Justice. Specifically, DEA interprets the public interest factors for registering distributors under the CSA, 21 U.S.C. § 823(b) and (e), to impose a responsibility on distributors to exercise due diligence to avoid filling suspicious orders that might be diverted to unlawful uses. *See Masters*, 861 F.3d at 212–13 (citing *In re Southwood Pharm., Inc.*, Revocation of Registration, 72 Fed. Reg. 36,487, 36,501 (DEA July 3, 2007), as source of DEA's "Shipping Requirement"); Compl. ¶ 50 (citing only 21 C.F.R. §1301.74 and *Masters* decision as basis for alleged requirement to "halt" suspicious orders).

27.  Plaintiff's theories of liability against Cardinal Health, as pleaded in the Complaint, are predicated on allegations that Cardinal Health breached alleged duties under the federal CSA to implement effective controls to detect and report "suspicious" pharmacy orders for prescription opioids and not to ship such alleged suspicious orders of controlled substances to Kentucky pharmacies. *See, e.g.*, Compl. ¶ 48 ("This 'closed' chain of

10

distribution was specifically designed by Congress to prevent the type of diversion and abuse that is complained of herein."); *id.* ¶ 50 (citing federal law as only source of alleged duties to "to monitor, identify, halt and, perhaps most importantly, report suspicious orders of controlled substances"); *id.* ¶ 2 (alleging that Cardinal Health's actions "include filling massive and/or 'suspicious' orders of unusual size, orders deviating substantially from a normal pattern, and orders of unusual frequency," which quotes 21 C.F.R. § 1301.74(b)); *id.* ¶ 117 (alleging that Cardinal Health violated the federal CSA's reporting and shipping requirements by "failing to report and halt suspicious orders"); *id.* ¶ 126 (alleging that Cardinal Health failed to uphold federal duties to "maintain effective controls against diversion through proper monitoring, distributing opioids without reporting, and refusing to fail to fill suspicious orders"); *id.* ¶¶ 167–170 (alleging that Cardinal Health violated legal duty, imposed by federal, not Kentucky, law to "to disclose or report orders of unusual size, orders deviating substantially from a normal pattern, or orders of unusual frequency"); *id.* ¶¶ 179–180 (alleging that Cardinal Health had a "duty to identify and track suspicious orders of prescription drugs," which, again, arises under federal, not Kentucky, law). Plaintiff does not and cannot identify a state law source for alleged duties to identify, report, and not ship suspicious orders of controlled substances.[2]

---

[2] Although Plaintiff cites to Kentucky law that purportedly imposes reporting requirements on Cardinal Health, none of these statutes or regulations actually imposes an independent requirement on a wholesale distributor. Rather, the Kentucky law cited by Plaintiff merely incorporates federal controlled substances law by, *inter alia*, requiring Cardinal Health to comply with applicable DEA regulations. *See, e.g.*, Compl. ¶ 27. This incorporation of federal law into state law supports the conclusion that Plaintiff's claims present a substantial federal question. *See, e.g., West Virginia* ex rel. *McGraw v. Eli Lilly & Co.*, 476 F. Supp.2d 230, 233–34 (E.D.N.Y. 2007) (concluding that WVAG's state-law claims stated substantial federal question because claimed damages arose from State's coverage of Zyprexa that was mandated by federal Medicaid law); *In re Pharmaceutical Industry Average Wholesale Price Litigation (Ariz.)*, 457 F.Supp.2d 77, 80 (D. Mass. 2006) (concluding that "the meaning of A[verage]

28. The federal question presented by Plaintiff's claims therefore is "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258.

29. <u>First</u>, Plaintiff's state law claims "necessarily raise" a federal question because "the right to relief depends upon the construction or application of federal law." *PNC Bank, N.A. v. PPL Elec. Util. Corp.*, 189 F. App'x 101, 104 n.3 (3d Cir. 2006); *see also Virgin Islands Hous. Auth. v. Coastal Gen. Constr. Servs. Corp.*, 27 F.3d 911, 916 (3d Cir. 1994) ("[A]n action under 28 U.S.C. § 1331(a) arises only if the complaint seeks a remedy expressly granted by federal law ***or if the action requires construction of a federal statute***, or at least a distinctive policy of a federal statute requires the application of federal legal principles" (emphasis added)); *Hardy v. Medtronic, Inc.*, 41 F. Supp.3d 571, 580 (W.D. Ky. 2014) (finding that plaintiff's state law claim necessarily raised a federal issue because proving a violation of federal law was essential to the plaintiff's case).

30. As pleaded, Plaintiff's claims against Cardinal Health require it to establish that Cardinal Health breached a duty found ***only*** in federal law by failing to report and stop shipments of otherwise lawful orders of prescription opioids into Kentucky. Therefore, the Complaint necessarily raises a federal issue—whether Cardinal Health violated the monitoring and reporting requirements of the CSA.

31. <u>Second</u>, this federal issue is "actually disputed" because the parties disagree as to whether Cardinal Health violated its duties that arise only under the federal CSA. Indeed, this federal issue is the "central point of dispute." *Gunn*, 568 U.S. at 259.

---

W[holesale] P[rice] in the federal Medicare statute is a substantial federal issue that properly belongs in federal court").

12

32. <u>Third</u>, the federal issue presented by Plaintiff's claims is "substantial." "The substantiality inquiry under *Grable* looks . . . to the importance of the issue to the federal system as a whole." *Gunn*, 568 U.S. at 260. Among other things, the Court must assess whether the federal government has a "strong interest" in the federal issue at stake and whether allowing state courts to resolve the issue will "undermine the development of a uniform body of [federal] law." *Id.* at 260, 262 (quotation marks omitted). As the Supreme Court explained in *Grable*, "[t]he doctrine captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." 545 U.S. at 312.

33. Plaintiff's theories of Cardinal Health's liability necessarily require that a court determine the scope of Cardinal Health's obligations under federal law. As Plaintiff pleads, regulation of controlled substances is first and foremost federal regulation: the "'closed' chain of distribution" under which Cardinal Health operates "was specifically designed by [the United States] Congress to prevent the type of diversion and abuse that is complained of herein." Compl. ¶ 48; *see id*. ¶ 47 (alleging that a "sophisticated, closed distribution system exists to push the drugs ***across the nation***") (emphasis added). Indeed, Congress designed the CSA with the intention of reducing illegal diversion of controlled substances, "while at the same time providing the legitimate drug industry with a ***unified approach*** to narcotic and dangerous drug control." 1970 U.S.C.C.A.N. 4566, 4571–72 (emphasis added).

34. Plaintiff's theories of Cardinal Health's liability thus "involve aspects of the complex federal regulatory scheme applicable to" the national prescription drug supply chain, *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 195 (2d Cir. 2005), and are "sufficiently

significant to the development of a uniform body of [controlled substances] regulation to satisfy the requirement of importance to the federal system as a whole," *NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*, 770 F.3d 1010, 1024 (2d Cir. 2014).[3] Furthermore, "minimizing uncertainty over" reporting obligations under the CSA "fully justifies resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *New York ex rel. Jacobson v. Wells Fargo Nat'l Bank, N.A.*, 824 F.3d 308, 317–18 (2d Cir. 2016); *see also PNC Bank, N.A.*, 189 F.3d 308, 317–18 (2d Cir. 2016); *see also PNC Bank, N.A.*, 189 F. App'x at 104 n.3 (plaintiff's state law claim "raises a substantial federal question—the interpretation of" a federal statute "over which the District Court properly exercised removal jurisdiction").

35. Removal is particularly appropriate here because Plaintiff's action is but one of more than 500 similar actions nationwide, most of which now are pending in an MDL in the Northern District of Ohio. The actions consolidated in the MDL include at least 43 similar actions brought originally in federal court by Kentucky counties and municipalities, some of which appear as examples in the Commonwealth's complaint. *See* Compl. ¶¶ 63–64 (alleging over-distribution to, *inter alia*, Bell and Clay counties, which are federal court plaintiffs). As Plaintiff pleads, the "opioid epidemic" is a "scourge that infected this country," with "many

---

[3] The Commonwealth's attempt to enforce the federal CSA raises a substantial federal question even though the CSA does not provide for a private right of action. In *Grable*, the Supreme Court specifically held that the lack of a federal cause of action does ***not*** foreclose federal-question jurisdiction. The Court stated that applying *Merrell Dow* too narrowly would both "overturn[] decades of precedent," and "convert[] a federal cause of action from a sufficient condition for federal-question jurisdiction into a necessary one." *Grable*, 545 U.S. at 316; *see also, e.g., Ranck v. Mt. Hood Cable Regulatory Comm'n*, 2017 WL 1752954, at *4–5 (D. Or. May 2, 2017) (state law claims based on violations of Cable Communications Policy Act raise substantial federal questions and satisfy *Grable* even though no private right of action exists under the Act).

states taking action[] and national government response." *Id.* ¶ 5 (citing article titled *Opioid Epidemic in the United States*). Judge Polster has dedicated his initial efforts presiding over the MDL to immediately achieving solutions to this nationwide problem.[4]

36.     <u>Fourth</u>, the federal issue also is capable of resolution in federal court "without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258. Federal courts exclusively hear challenges to DEA authority to enforce the CSA against distributors, and litigating this case in a state court runs the risk of the state court applying federal requirements inconsistently with the manner in which the DEA—the federal agency tasked with enforcing the CSA—applies them. Furthermore, Plaintiff seeks, *inter alia*, to "stop Cardinal from filling suspicious orders for opioids" and to "enjoin" Cardinal Health. Compl. ¶ 15; *see id.* Prayer for Relief at 44–46. The CSA vests federal courts with jurisdiction over proceedings seeking to enjoin violations of the CSA. *See* 21 U.S.C. § 882(a) ("The district courts of the United States and all courts exercising general jurisdiction in the territories and possessions of the United States shall have jurisdiction in proceedings . . . to enjoin violations of this subchapter.."). Thus, federal courts already are the primary forum for determining the permissible scope of restraints on distributors under the CSA. Plaintiff's Complaint presents these precise questions by repeatedly invoking the uniquely federal statutory scheme containing the "suspicious order" regulations. Federal jurisdiction is therefore "consistent with congressional judgment about the sound division of labor between state and federal courts governing the application of § 1331." *PNC Bank, N.A.*, 189 F. App'x at 104 n.3.

---

[4] Less than two months after the MDL was created, Judge Polster convened the first day-long settlement conference on January 31, 2018. Judge Polster required attendance by party representatives and their insurers and invited attendance by Attorneys General and representatives of the DEA and FDA. Attorney General Beshear participated in the MDL settlement conference on January 31, 2018.

15

37. <u>In summary</u>, removal of this action is appropriate because Plaintiffs' "state-law claim[s] necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable*, 545 U.S. at 314; *see also Jacobson*, 824 F.3d at 315–18 (state law claims based on defendant's alleged violation of Internal Revenue Code satisfy *Grable*); *NASDAQ OMX Grp., Inc.*, 770 F.3d at 1031 (state law claims premised on violations of Exchange Act "necessarily raise disputed issues of federal law of significant interest to the federal system as a whole"); *Gilmore v. Weatherford*, 694 F.3d 1160, 1176 (10th Cir. 2012) ("Although plaintiffs could lose their conversion claim without the court reaching the federal question, it seems that they cannot win unless the court answers that question. Thus, Plaintiff's "right to relief necessarily depends on resolution of a substantial question of federal law.") (citation omitted); *Broder*, 418 F.3d at 196 (state law claims premised on cable provider's alleged violations of the Communication Act's uniform rate requirement satisfy "the *Grable* test for federal-question removal jurisdiction"); *PNC Bank, N.A.*, 189 F. App'x at 104 n.3 (state law claim based on violation of Internal Revenue Code "gives rise to federal-question jurisdiction" under *Grable*); *Rank*, 2017 WL 1752954, at *5 (state law claims based on violations of Cable Communications Policy Act satisfy *Grable*).

38. To the extent that the Court determines that some, but not all, Plaintiff's counts in the Complaint state a substantial federal question, it has supplemental jurisdiction over the counts determined not to state a substantial federal question, which are so related that they "form part of the same case or controversy." 28 U.S.C. § 1367(a).

## V. THE AMOUNT IN CONTROVERSY EXCEEDS $75,000

39. "[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014). "[W]hen a defendant seeks federal-court adjudication, the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court." *Id.* at 553.

40. Plaintiff alleges the "Kentucky Medicaid program alone has paid millions of dollars for unnecessary prescriber visits and improper prescriptions as well as addiction treatment and services." Compl. ¶ 14. Plaintiff seeks restitution to the Kentucky Medicaid program, treble damages, punitive damages, and civil penalties of up to $10,000 for each willful violation of the Kentucky Consumer Protection Act. *Id.*, Prayer for Relief, at 46. It is thus clear that the alleged amount in controversy exceeds $75,000, exclusive of interest and costs.

## VI. OTHER REMOVAL ISSUES

41. All Defendants in this action have joined in this Notice of Removal and have consented to removal, satisfying 28 USC 1446(b)(2)(A).

42. Pursuant to 28 U.S.C. § 1446(d), Cardinal Health will promptly file a copy of this Notice of Removal with the clerk of the state court where the suit has been pending and serve notice of the filing of this Notice of Removal on Plaintiff's counsel.

43. Cardinal Health files this Notice of Removal without waiving any defenses to the claims asserted by Plaintiff.

44. Cardinal Health reserves the right to amend or supplement this Notice.

**WHEREFORE**, Cardinal Health removes this action, now pending in the Jefferson Circuit Court, Jefferson County, Kentucky, as Civil Action No. 18-CI-001013, to this Court.

Dated this the 26th day of March, 2018.

    Respectfully submitted,

/s/Steven B. Loy
Steven B. Loy
Perry M. Bentley
Monica H. Braun
Stoll Keenon Ogden PLLC
300 West Vine Street, Suite 2100
Lexington, KY 40507-1801
Telephone: (859) 231-3000
Fax: (859) 253-1093
steven.loy@skofirm.com
perry.bentley@skofirm.com
monica.braun@skofirm.com

Enu Mainigi*
F. Lane Heard*
Ashley W. Hardin*
**WILLIAMS & CONNOLLY LLP**
725 Twelfth Street, N.W.
Washington, DC 20005
Telephone: (202) 434-5000
Facsimile: (202) 434-5029
emainigi@wc.com
lheard@wc.com
ahardin@wc.com

*\* denotes national counsel who will seek pro hac vice admission*

*Attorneys for Defendants Cardinal Health 5, LLC; Cardinal Health 100, Inc.; Cardinal Health 108, LLC; Cardinal Health 110, LLC; Cardinal Health 113, LLC; Cardinal Health 132, LLC; Cardinal Health 200, LLC; Cardinal Health 414, LLC; and The Harvard Drug Company, LLC, d/b/a Major Pharmaceuticals, d/b/a Rugby Laboratories*

## **CERTIFICATE OF SERVICE**

     I hereby certify that a true and correct copy of the foregoing was served via United States first-class mail this 26th day of March, 2018, upon the following:

| | |
|---|---|
| LeeAnne Applegate<br>Elizabeth Natter<br>Charles W. Rowland<br>Assistant Attorneys General<br>Commonwealth of Kentucky<br>Office of the Attorney General<br>Office of Consumer Protection<br>1024 Capital Center Drive, Suite 200<br>Frankfort, Kentucky 40601<br><br>Elizabeth.Natter@ky.gov<br>LeeAnne.Applegate@ky.gov<br>Charlie.Rowland@ky.gov<br>(502) 696-5300<br><br>*Attorneys for Plaintiff* | A. David Johnstone<br>Brian C. Thomas<br>Assistant Attorneys General<br>Commonwealth of Kentucky<br>Office of the Attorney General<br>Office of Medicaid Fraud and Abuse<br>1024 Capital Center Drive, Suite 200<br>Frankfort, Kentucky 40601<br><br>David.Johnstone@ky.gov<br>Brian.Thomas@ky.gov<br>(502) 696-5300<br><br>*Attorneys for Plaintiff* |

                                                /s/Steven B. Loy
                                                *Counsel for Defendants*