IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

COMMONWEALTH OF KENTUCKY,
*ex. rel.* ANDY BESHEAR, ATTORNEY
GENERAL,

      Plaintiff,

v.

CARDINAL HEALTH 5, LLC;
CARDINAL HEALTH 100, INC.;
CARDINAL HEALTH 108, LLC;
CARDINAL HEALTH 110, LLC;
CARDINAL HEALTH 113, LLC;
CARDINAL HEALTH 132, LLC;
CARDINAL HEALTH 200, LLC;
CARDINAL HEALTH 414, LLC; AND
THE HARVARD DRUG COMPANY,
LLC, D/B/A MAJOR
PHARMACEUTICALS, D/B/A RUGBY
LABORATORIES

      Defendants

CIVIL ACTION NO. 3:18-cv-184-DJH
**(Removal from Commonwealth of
Kentucky, Jefferson Circuit Court, Civil
Action No. 18-CI-001013)**

## COMMONWEALTH'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO STAY

COMES NOW Plaintiff, the Commonwealth of Kentucky, *ex rel.* Andy Beshear, Attorney General, ("Kentucky"), and responds to and opposes the Motion to Stay Pending Ruling by Judicial Panel on Multidistrict Litigation filed by Defendants, Cardinal Health 5, LLC; Cardinal Health 100, Inc.; Cardinal Health 108, LLC; Cardinal Health 110, LLC; Cardinal Health 113, LLC; Cardinal Health 132, LLC; Cardinal Health 200, LLC; Cardinal Health 414, LLC; and The Harvard Drug Company, LLC, d/b/a Major Pharmaceuticals, d/b/a Rugby Laboratories (collectively "Defendants"). *See* [Doc. 4]. Plaintiff respectfully requests this Court

1

deny the Motion to Stay and enter an order expediting briefing on the pending Motion for Remand.

Defendants' Motion to Stay is an attempt to delay this case and persuade the federal courts to exercise jurisdiction where it does not exist so that this case can be absorbed into the Multidistrict Litigation in the Northern District of Ohio ("Federal MDL"), where Defendants can avoid proceeding in the courts of Kentucky. The Motion to Stay is another tactic employed by Defendants to slow the resolution of jurisdictional issues and control case placement. Defendants disregard the unique stature of this case as an enforcement action filed by the Attorney General of Kentucky, on behalf of the Commonwealth of Kentucky, seeking remedies under Kentucky law, for violations of Kentucky law. Kentucky implores this Court to eschew the needless delay strategies engaged by Defendants and deny this Motion to Stay, as there is no legal reasoning or practical benefit that supports a stay in this case.

The existence of an *opposed* Conditional Transfer Order in front of the Judicial Panel on Multidistrict Litigation ("J.P.M.L.") should not dissuade this Court from addressing the jurisdictional issues before it. *See* Panel Rule 1.5, R.P.J.P.M.L., 199 F.R.D. at 427 (expressly providing that the pendency of a conditional transfer order does not suspend pretrial proceedings or limit the pretrial jurisdiction of the district court in which the action is pending). There is no reason to delay the briefing of the remand orders, as this Court has full authority to resolve questions of jurisdiction.[1] *See Beshear v. Volkswagen Group of America, Inc.*, 2016 WL 3040492 at *1 (E.D. Ken. 2016) (citing *Meyers v. Bayer AG*, 143 F. Supp. 2d 1044, 1046 (E. D. Wisc. 2001)). *See also In re: Air Crash Disaster at Paris, France on March 3, 1974*, 376 F.

---

[1] The JPML will not address jurisdictional issues. Rather it will decide transfer on whether the litigation involves common questions of fact, and whether centralization serves the convenience of the parties and promotes the just and efficient conduct of the litigation. *In re Vioxx Products Liability Litig.*, 360 F. Supp. 2d 1352, 1354 (J.P.M.L. 2005).

Supp. 887, 888 (J.P.M.L. 1974), *The Judicial Panel on Multidistrict Litigation, Transferor Courts and Transferee Courts*, 78 F.R.D. 575, 576 (1978). As such, Plaintiff requests this Court deny Defendant's Motion to Stay.

I.  **STANDARD FOR MOTION TO STAY AT THIS POSTURE**

Though cases before this Court have been transferred by the J.P.M.L. to the Federal MDL, the issue before this court is *not* whether an action filed by a *county or city* should be placed into the Federal MDL pool of over 400 cases, but whether an enforcement action brought by the Commonwealth through the Attorney General should be similarly adjudicated in the federal forum. As a preliminary matter, the Federal MDL Court "recognizes it has no jurisdiction over (1) the AGs or their representatives, [or] (2) the State cases they have filed. . . . Further, nobody should construe the AGs' participation in MDL settlement discussions as a limitation on litigation in the sovereign States." *In re National Prescription Opiate Litigation*, 1:17-md-02804, ECF No. 146, Order Regarding State Court Coordination (N. D. Ohio Feb. 27, 2018).

Still, Defendants request that this Court delay the case via a stay on briefing the jurisdictional issues and send the case up the chute to the J.P.M.L. to determine whether the case should be sent to the Federal MDL. In support of this request, Defendants argue that the stay will conserve judicial resources, prevent inconsistent rulings, and promote the interest of justice. [Doc. 4 at 6].

The considerations adopted by this Court for determination of whether to grant a motion to stay where there is a pending Motion to Remand, a pending Conditional Transfer Order, and a pending Notice of Opposition to Conditional Transfer Order, are (1) the potential prejudice to the non-moving party; (2) the hardship and inequity to the moving party if the action is not stayed; and (3) the judicial resources that would be saved by avoiding duplicative litigation if the cases

3

are in fact consolidated. *Bertram v. Federal Express Corp.*, 2006 WL 3388473, at *1 (W.D. Ken. 2006) (citing *Rivers v. Walt Disney Co.*, 980 F.Supp. 1358, 1360 (C.D. Cal. 1997)). Consideration of these issues resolves in favor of denying the stay in this case. The decision of whether to grant a motion to stay is discretionary. *Bertram*, 2006 WL 3388473, at *1.

## II. THE MOTION TO STAY SHOULD BE DENIED, AS IT WOULD PREJUDICE THE COMMONWEALTH OF KENTUCKY

The entry of a stay in this case is prejudicial to Kentucky, as it may result in an indefinite pause in this litigation and a deferment of resolution of genuine jurisdictional issues presented. A determination that federal jurisdiction does not exist over this case is "clearly inevitable." *See Beshear*, 2016 WL 3040492 at *1. Kentucky seeks redress exclusively for the violation of state law through nine counts, including violation of the Commonwealth's Consumer Protection Act (Count I), fraud by omission (Count VI), and Medicaid Fraud under KRS Chapter 205 (Count VII), which are attacked in Defendants' Notice of Removal. The action does not fall within the purview of federal courts, therefore any stay would prejudice Kentucky by (1) forcing it to remain in federal court indefinitely, and (2) delaying the ruling on its Motion to Remand.

In a similar case discussed infra, the Southern District of West Virginia analyzed whether the state's claims against similarly situated opioid distributor McKesson Corporation for violations of the West Virginia Uniform Controlled Substances Act and state public nuisance laws created federal jurisdiction. *West Virginia, et. al. v. McKesson Corporation*, 2:17-CV-03555, ECF No. 21, Memorandum Opinion and Order Granting Plaintiff's Motion to Remand (S.D.W. Va. February 15, 2018). The Court explained simply that "federal courts have little interest in deciding cases involving West Virginia's Uniform Controlled Substances Act and West Virginia's negligence and public nuisance law, even if a violation of a federal statute or standard is an element of those claims." *Id.*

Denial of the stay is essential to the just and expedient resolution of the jurisdictional question in this case. A stay would prejudice Kentucky by indefinitely delaying ruling on this issue. Kentucky maintains that this case does not belong in federal court and should *not* be transferred to the MDL. However, should the same occur, the rightful return of this case will be delayed inevitably, as the Federal MDL Court issued a ruling staying all litigation pending settlement negotiations. 1:17-md-02804, ECF No. 130, Order Involving Remands (February 16, 2018).

Additionally, a stay would further postpone resolution of this case as a whole. Kentucky has been devastated by the opioid epidemic, with Eastern Kentucky's overdose death rate reaching over 100 per 100,000 people in some counties[2]. Kentucky had a statistically significant drug overdose death rate increase from 2014 to 2015[3]. According to the CDC, Kentucky has the 3rd highest opioid-related overdose rate in the country. Data from 2013 onward shows that Kentucky has the third highest drug overdose mortality rate in the United States, with 23.6 per 100,000 people suffering drug overdose fatalities in 2013 alone[4]. Every day that this case is prolonged is a day that more Kentuckians die from the drugs that Defendants distributes and over-distributes throughout the state.

### III. DENYING THE STAY WOULD NOT RESULT IN HARDSHIP OR INEQUITY TO DEFENDANTS

Because of the unique posture and plaintiff in this case, denial of the stay and a subsequent decision on the jurisdictional issues in this case would not result in any prejudice or hardships to Defendants. The case is the only one brought by the Attorney General of Kentucky

---

[2] INTERACTIVE: Eastern Kentucky has highest overdose rates in the U.S. (Mar. 22, 2018) http://www.wymt.com/content/news/INTERACTIVE-Eastern-Kentuckians--477679053.html.
[3] Drug Overdose Death Data, Centers for Disease Control (CDC), https://www.cdc.gov/drugoverdose/data/statedeaths.html (last visited October 22, 2017).
[4] *See* http://www.healthyamericans.org/reports/drugabuse2013/release.php?stateid=KY (last accessed on October 21, 2017).

against these Defendants. Thus, permitting briefing and resolution of the narrow jurisdictional issues in this case would hardly affect cases against Defendants brought by municipalities; no floodgates would be opened by a denial of the stay and a ruling by this Court on Kentucky's Motion to Remand.

While Defendants attempt to catalog this case with hundreds of cases brought by cities, counties, and other municipalities that have been transferred to the MDL, this case is undeniably distinguishable. This is the only case against Defendants that this, or any court, will address that has been brought by the Commonwealth through the Attorney General. This is the only case against Defendants that will present this "exact jurisdictional question." *ZeniMax Media Inc. v. Samsung Elecs. Co., Ltd.*, 2017 WL 4805524, at *1 (E.D. Tex. 2017).

In fact, this case is only "like" a small handful of other cases brought by Attorneys General, as only a fraction of states have filed suit against manufacturers and distributors of opioids[5]; another 41 state attorneys general form the non-litigating multi-state group that has launched an investigation against opioid manufacturers and distributors like Defendants. There is no threat of inconsistent rulings due to the uniqueness of the plaintiff. Further, it would provide deference to the Federal MDL court, which has already clearly expressed its lack of jurisdiction over the attorneys general, and prevent needless analysis of jurisdictional issues that are different from those involved in the hundreds of cases before it.

## IV.    A STAY WOULD NOT SERVE JUDICIAL ECONOMY

A stay does not promote judicial economy, but rather delays the inevitable for the parties. This Court is in the best position to consider jurisdictional arguments. The J.P.M.L. processes

---

[5] The Litigating States include West Virginia, Delaware, New Mexico and Kentucky, which have filed against both manufacturers and distributors. Additional states have filed against manufacturers, including New Hampshire, Montana, Alabama. Cases are still being filed, with Arkansas filing against manufacturers Purdue Pharma, Johnson & Johnson, and Endo on March 29, 2018. Not all cases have significant or relevant activity; for example, in the case filed by New Mexico, the summonses were just issued on March 9, 2018. *New Mexico v. Purdue Pharma, LP, et. al.*, D-101-CV-201702541 (1st Dist. Ct., Cnty of Santa Fe).

should not interfere, or be used by Defendants to interfere with this Court's consideration. *See In re: Air Crash Disaster at Paris, France on March 3, 1974*, 376 F. Supp. at 888, *The Judicial Panel on Multidistrict Litigation, Transferor Courts and Transferee Courts*, 78 F.R.D. at 576. A stay would not serve judicial economy in any manner, as it would simply prolong resolution of genuine jurisdictional issues and the case as a whole. Further, as remand is proper, a stay would leave Kentucky needlessly tethered in federal courts while it should be litigating in the state court system, resulting in a waste of federal resources.

V. **CONSIDERATION OF THE DECISIONS IN SIMILAR CASES RESOLVES IN FAVOR OF DENYING THE MOTION TO STAY**

Consideration of the adjudication of similar issues raised in other cases flagged for transfer to the Federal MDL reveals that similar cases have been remanded. The representation by Defendants that "a number of actions filed by state attorneys general have either been transferred or tagged for inclusion and conditionally transferred to the MDL" is misleading. *See* [Doc. 4 at 4]. First, Defendant includes the Commonwealth's case against similarly situated opioid distributor McKesson, which is in a similar posture in the Eastern District, with a Motion to Remand pending[6]. The State of Alabama *chose* the federal forum for its action against Purdue Pharma, L.P., which has been collected in the Federal MDL as case number 1:18-op-45236-DAP. In Montana, the district judge indiscriminately denied all pending motions upon the entry of the Conditional Transfer Order transferring that case to the J.P.M.L. *Montana v. Purdue Pharma, L.P., et al.*, 6:18-cv-00033-SEH, ECF No. 20, Order (D. Mont. March 6, 2018). The court simply denied the motions "without prejudice to renewal, if appropriate, before the transferee court." *Id.* Montana has noticed its opposition to the Conditional Transfer Order.

---

[6] *Commonwealth of Kentucky v. McKesson Corporation*, 3:18-cv-00010-GVT, ECF No. 4 Plaintiff's Motion to Remand (Mar. 1, 2018).

*Montana v. Purdue Pharma, L.P., et. al.*, MT/6:18-cv-00033, ECF No. 3 (J.P.M.L. March 9, 2018).

Further, Defendants noticeably omit reference to similar, relevant actions brought by other Litigating States that have been remanded. In *Delaware v. Purdue Pharma, L.P., et. al.*, Case No. 18-cv-00383-RGA, a similar Notice of Removal, ECF No. 1, and Motion to Remand ECF No. 8, were filed on federal question jurisdiction. (D. Del.) The defendant therein filed a Motion to Stay pending ruling by the J.P.M.L. pursuant to a Conditional Transfer Order, ECF No. 14, which was denied without opinion. ECF No. 24. Instead, the plaintiff's request for expedited briefing was granted[7]. ECF No. 13. Additionally, *New Hampshire v. Purdue Pharma, Inc., et. al.*, 17-cv-427-PB (D.N.H. 2018), was removed on grounds that the action formed a federal question under the Class Action Fairness Act. However, the argument that the State of New Hampshire's Complaint qualified as a class action under CAFA was rejected by the district court and the case was remanded. 17-cv-467-PB, ECF No. 29, Order (D.N.H. November 27, 2017). The State of Oklahoma filed only against manufacturers and has not been removed. *State of Oklahoma et. al. v. Purdue Pharma, LP, et. al.*, No. CJ-2017-816 (Dist. Ct. Cleveland Cnty, Ok).

The most similar case to the one at bar comes from neighboring West Virginia. *The State of West Virginia v. McKesson Corporation* case was remanded first on January 24, 2017. 2017 WL 357307, at *4 ("Order Granting First Remand") (S.D.W. Va.). The case was removed then remanded again on February 15, 2018.[8] 2:17-CV-03555, ECF No. 21, Memorandum Opinion and Order Granting Plaintiff's Motion to Remand ("Order Granting Second Remand"). Applying *Grable & Sons Metal Products, Inc. v. Darue Engineering and Manufacturing*, 545 U.

---

[7] A Conditional Transfer Order has been entered and opposed by Delaware. 1:17-md-02804-DAP, ECF 190, CTO-16 (J.P.M.L. Mar. 23, 2018)
[8] No motion to stay similar to that here was filed in *West Virginia I* or *West Virginia II*.

S. 208 (2005), the court determined, twice, that federal jurisdiction simply did not exist. *See Id.*, 2017 WL 357307, at *4.

On the first remand, the argument by McKesson was that (1) general reference to federal law in three counts, though accompanied by specific citations to the West Virginia Uniform Controlled Substances Act, created federal claims on the face on the complaint, while (2) *all* of West Virginia's claims depended on a substantial federal question of whether McKesson violated a duty to refuse to fill suspicious orders, which could only be generated by the federal Controlled Substances Act. 2017 WL 357307, at *4.

As to the first argument, the court held that the general "catch-all" citations to federal law within the counts did not amount to a "password" to removal jurisdiction. *Id.* at *6 (citing *Grable*, 545 U.S. at 314). The complaint, which sought relief for McKesson's violations of the West Virginia Uniform Controlled Substances Act, state public nuisance laws, and Medicaid fraud, among other causes of action, did not raise facially federal claims; rather, West Virginia did not allege that federal law provides "either a cause of action or a basis for a legal duty violated here . . . ." *Id.*

As to the substantial federal question issue, Defendant argued specifically that "if any duty to refuse to fill suspicious orders of controlled substances exist[ed] at all" it existed in two letters from the Drug Enforcement Agency, discussed in *Masters Pharmaceuticals*. *Id.* at *4. Under *Grable*, West Virginia argued, the federal claims were not necessarily raised, as there was no argument that the federal statute failed to impose a specific duty to refuse to fill suspicious orders. *Id.* at *6. The court declined to find federal jurisdiction under *Grable*, finding that the DEA letters could not be the only possible source of a duty to avoid filling suspicious orders, and the complaint alleged numerous duties implicated by state law. *Id.* Those state law duties

9

included those imposed by the West Virginia Board of Pharmacy to implement controls to protect against diversion of opioids. *Id.*

The second remand issues mirrored the first, with a focus by McKesson on the argument that West Virginia relied in state court on the DEA letters for the existence of a duty, contrary to their arguments on the first remand motion. *See* ECF No. 21, Order Granting Second Remand. McKesson removed again on the grounds that this position was opposite from the position taken by West Virginia in the original removal proceedings, and invoked federal question jurisdiction. *Id.* The Court compared the case to *Merrell Dow*, where the defendant similarly argued that the causes of action were raised, in part, on claims arising under the laws of the United States. *Id.* However, even the "incorporation" of a federal duty found in the DEA letters into West Virginia's complaint was "not substantial" because, as observed in the order granting the first remand, the complaint alleged violations of numerous duties implicated by state law that did not depend on any federal law duty. *Id.* The federal court simply had "little interest" in deciding cases involving the state laws from which West Virginia's claims arose. *Id.* The court further recognized the interest in maintaining the balance between state and federal judicial responsibilities. *Id.*

At this stage, and in this case, reason favors denying the Motion to Stay and addressing Kentucky's Motion to Remand with no further delay. Proper briefing and analysis will reveal that this case does not belong in federal court. No stay is needed for the judicious resolution of this case and it is in the best interest of justice for the citizens of Kentucky to permit the case to proceed.

## VI. CONCLUSION

Consideration of all relevant factors resolves in favor of denying the Motion to Stay. This case belongs in the courts of the Commonwealth of Kentucky, and any step taken by Defendants to delay the case's prompt return to those courts delays the inevitable determination of no federal jurisdiction, and delays the resolution of the case for the benefit of the citizens of Kentucky. While the stay would greatly prejudice Kentucky, conversely, the denial of the stay would result in no prejudice or hardship for Defendants. Further, the stay does not meaningfully conserve any judicial resources. For these and the foregoing reasons, Kentucky respectfully requests that Defendants' Motion to Stay be denied.

Filed: March 30, 2018

Respectfully submitted,

ANDY BESHEAR
ATTORNEY GENERAL

By: __/s/Elizabeth U. Natter_____
LeeAnne Applegate
Elizabeth Natter
Charles W. Rowland
Assistant Attorneys General
Commonwealth of Kentucky
Office of the Attorney General
Office of Consumer Protection
1024 Capital Center Drive, Suite 200
Frankfort, Kentucky 40601
Elizabeth.Natter@ky.gov
LeeAnne.Applegate@ky.gov
Charlie.Rowland@ky.gov
(502) 696-5300

Wesley W. Duke
C. David Johnstone
Brian C. Thomas
Assistant Attorneys General

Commonwealth of Kentucky
Office of the Attorney General
Office of Medicaid Fraud and Abuse Control
1024 Capital Center Drive, Suite 200
Frankfort, Kentucky 40601
Wesley.Duke@ky.gov
David.Johnstone@ky.gov
Brian.Thomas@ky.gov
(502) 696-5300

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on March 30, 2018, I electronically filed a true and correct copy of the foregoing motion with the Clerk of the Court using the CM/ECF system, which will send notification to all attorneys of record in this matter.

/s/ _Elizabeth U. Natter_____