IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| COMMONWEALTH OF KENTUCKY *ex rel.* ANDY BESHEAR, ATTORNEY GENERAL,<br><br>Plaintiff,<br><br>v.<br><br>CARDINAL HEALTH 5, LLC, et al.<br><br>Defendants. | CIVIL ACTION NO. 18-cv-00184<br><br>Judge David J. Hale |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO STAY PENDING RULING BY UNITED STATES JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

Defendants Cardinal Health 5, LLC; Cardinal Health 100, Inc.; Cardinal Health 108, LLC; Cardinal Health 110, LLC; Cardinal Health 113, LLC; Cardinal Health 132, LLC; Cardinal Health 200, LLC; Cardinal Health 414, LLC; and The Harvard Drug Company, LLC, d/b/a Major Pharmaceuticals, d/b/a Rugby Laboratories (collectively, "Cardinal Health"), submit this reply in further support of their motion to stay proceedings pending ruling by the United States Judicial Panel on Multidistrict Litigation ("JPML") to transfer this matter to the United States District Court for the Northern District of Ohio for *In re National Prescription Opiate Litigation*, MDL No. 2804 ("MDL Court").

**I.  INTRODUCTION**

Courts "frequently" and "routinely" grant motions to stay when faced with competing motions to remand (filed by plaintiffs) and to stay proceedings pending a transfer decision by the JPML (filed by defendants). Just this week, Judge Van Tatenhove in the Eastern District of Kentucky stayed the State's identical case against McKesson Corporation to allow the MDL

1

Court to rule on the State's motion to remand. That decision, and existing case law, including many of the cases cited by Plaintiff, provides compelling support for entering a stay in this case.

In deciding whether to issue a stay pending a ruling by the JPML, courts consider three factors: (1) potential prejudice to the non-moving party; (2) hardship and inequity to the moving party if a stay is not entered; and (3) the interests of judicial economy. *Beshear v. Volkswagen Grp. of Am., Inc.*, 2016 WL 3040492, at *6 (E.D. Ky. May 25, 2016). All three factors favor granting a stay. Plaintiff will suffer no prejudice from the delay in addressing its Motion to Remand, as the MDL Court has already expressed a clear intention to handle these decisions collectively and uniformly. Cardinal Health, by contrast, would suffer significant hardship if a stay is not entered, including wasting resources filing a responsive pleading in this Court when transfer is likely imminent and risking inconsistent decisions on an important and complex jurisdictional issue. Finally, judicial economy will be served by allowing this case to be consolidated in the MDL with other cases posing the same factual and legal issues.

Plaintiff's only real basis for opposing the stay is its claim that the case ought to be remanded to state court. A pending motion to remand is not, however, a valid basis to oppose the requested brief stay. Plaintiff will get its opportunity to present the merits of its motion to remand. The question is whether judicial economy is best served by having this Court—a court that indisputably will not retain jurisdiction over this case whether it proceeds in federal or state court—enter a brief stay to allow the JPML to decide whether this case should be transferred to the MDL. The answer to that question is "yes."

## II. ARGUMENT

### A. The Court Should Follow the "General Rule" of Deferring a Decision on Plaintiff's Motion to Remand Pending the JPML's Transfer Decision.

Although Plaintiff claims that "there is no legal reasoning . . . that supports a stay in this case," it is the "general rule" within the Sixth Circuit "for federal courts to defer ruling on pending motions to remand in MDL litigation until after the [JPML] has transferred the case." *Kelly v. Aultman Physician Center*, 2013 WL 2358583, at *2 (N.D. Ohio May 29, 2013) (quoting *Jackson v. Johnson & Johnson, Inc.*, 2001 WL 34048067, at *6 (W.D. Tenn. Apr. 3, 2001)). As one court explained:

> [T]he existence of federal jurisdiction in this case involves complicated questions common to the cases transferred in the MDL court. Having transferor courts address these issues increases the likelihood of inconsistent outcomes on a similar set of legal and factual issues that are likely to arise in a number of cases. A stay is appropriate, pending transfer, to allow the MDL court to rule on the remand motions.

*Curtis v. BP Am., Inc.*, 808 F. Supp.2d 976, 982 (S.D. Tex. 2011); *cf. Lafoy v. Volkswagen Grp. of Am., Inc.*, 2016 WL 2733161, at *5 (E.D. Mo. May 11, 2016) ("Defendant does not clearly lack federal jurisdiction, and the interests of judicial economy require the stay of the motion to remand pending a transfer to MDL").

Indeed, courts in the majority of the cases Plaintiff cited in its Opposition ***granted similar motions to stay*** notwithstanding pending motions to remand.[1] One of those cases even noted that

---

[1] The Opposition cites five cases addressing motions to stay pending a transfer decision by the JPML, four of which involved a pending remand motion. The court granted the motion stay in three of the five cases. *See Beshear v. Volkswagen Grp. of Am., Inc.*, 2016 WL 3040492, at *1 (E.D. Ky. 2016); *Meyers v. Bayer AG*, 143 F. Supp.2d 1044 (E.D. Wisc. 2001); *Rivers v. Walt Disney Co.*, 980 F. Supp. 1358, 1360 (C.D. Cal. 1997) (no pending remand motion). The other two cases are readily distinguishable. In *Bertram v. Federal Express Corp.*, 2006 WL 3388473, at *1–2 (W.D. Ky. 2006), the court denied the motion to stay because plaintiff's claims, which alleged false accusations of theft and encouragement of criminal charges based on plaintiff's

"a *majority* of courts have concluded that it is often appropriate to stay preliminary pretrial proceedings while a motion to transfer and consolidate is pending with the MDL Panel because of the judicial resources that are conserved." *Rivers v. Walt Disney Co.*, 980 F. Supp. 1358, 1362 (C.D. Cal. 1997) (emphasis added). More recent cases describe courts as "frequently" and "routinely" granting stays under those circumstances. *See, e.g.*, *Jewett v. Baxter*, 2017 WL 2389544, at *1 (D.S.D. June 1, 2017) (courts "frequently grant stays when an MDL decision is pending"); *Royal Park Investments SA/NV v. Bank of Am. Corp.*, 941 F. Supp.2d 637, (S.D.N.Y. 2013) ("where a multi-district litigation proceeding has been established, courts have routinely stayed motions pending rulings by the JPML") (collecting cases declining to decide motions to remand); *Fox v. Depuy Orthopaedics, Inc.*, 2011 WL 6057509, at *2 (W.D. Ky. Dec. 6, 2011); *Bynum v. Volkswagen Grp. of Am., Inc.*, Civ. Act. No. 3:15CV-00810-JHM (W.D. Ky. Dec. 4, 2015) [Dkt. No. 15] (slip op.); *Pierce v. Frink*, 2017 WL 4923508, at *2 (E.D. Cal. Oct. 31, 2017); *Oregon, ex rel. Kroger v. Johnson & Johnson*, 2011 WL 1347069, at *5 (D. Or. Apr. 8, 2011); *Noland v. Enterprise Holdings, Inc.*, 2010 WL 2555122, at *2 (D. Kan. June 22, 2010); *Gonzales v. Lucille Packard Children's Hosp.*, 2010 WL 1263714, at *2 (N.D. Cal. Mar. 29, 2010); *Bd. of Trustees of the Teachers' Retirement Sys. of the State of Illinois v. Worldcom, Inc.*, 244 F. Supp.2d 900, 906 (Oct. 18, 2002); *Meyers v. Bayer AG*, 143 F. Supp.2d 1044, 1053 (E.D.

---

union affiliation, were not sufficiently similar to the MDL proceedings, which focused on classification of package delivery drivers as independent contractors rather than employees. And *West Virginia v. McKesson Corp.*, No. 17-CV-03555, ECF No. 21 (S.D. W.Va. Feb. 15, 2018) did not address a stay motion at all. It is purely a ruling on the merits of West Virginia's remand motion and turned on a West Virginia regulation that has no analog in Kentucky. *See infra* p. 8. A sixth case, *ZeniMax Media v. Samsung Electronics Co., Ltd.*, 2017 WL 4805524, at *5 (N.D. Tex. Oct. 25, 2017), stayed proceedings pending adjudication of post-trial and appellate briefings in a related case based on "the court's interest in promoting judicial economy and avoiding unnecessary duplication of efforts and inconsistent rulings." Both considerations are relevant here. *See infra* pp. 10–13.

Wisc. 2001); *Aetna U.S. Healthcare v. Hoechst Aktiengesellschaft*, 48 F Supp.2d 37, 43 (D.D.C. 1999).

In the opioid litigation specifically, several federal courts—including ones in Kentucky— have stayed proceedings and deferred decisions on plaintiffs' motions to remand pending transfer to the MDL Court. As noted, just this week Judge Van Tatenhove in the Eastern District of Kentucky stayed the State's identical case against McKesson Corporation, concluding that, because the MDL Court "has indicated [its] desire to address motions to remand collectively" in the Opiate MDL, deferral of the State's motion to remand was appropriate. *See, e.g.*, *Commonwealth of Kentucky ex rel. Beshear v. McKesson Corp.*, No. 3:18-cv-00010 (E.D. Ky. Apr. 12, 2018) ("McKesson Stay Order"); *see also Floyd Cnty v. Purdue Pharma, L.P.*, No. 7:17-cv-00186, ECF No. 18 at 1 (E.D. Ky. Jan. 22, 2018) (same); *Estate of Brockel v. Purdue Pharma, L.P.*, No. 1:17-cv-00521, ECF No. 58 at 11 (S.D. Ala. Feb. 27, 2018) (concluding that the MDL should decide legal issues related to remand "to provide uniformity through the nation as to how the issue is resolved"). Plaintiff fails to address any of these other federal decisions.

As Judge Van Tatenhove noted, the MDL Court itself has stated its preference to collectively and uniformly address remand motions and has made it clear that any parties filing motions to remand in the MDL have not waived any rights or obligations related to timeliness. Order Regarding Remands, ECF No. 130, Case No. 1:17-md-02804 (N.D. Ohio Feb. 16, 2018) ("MDL Remand Order"). The JPML has already transferred cases to the Opioid MDL proceeding in which motions to remand were pending. *See, e.g.*, *In re Nat'l Prescription Opiate Litig.*, MDL No. 2804, Dkt. No. 328 (J.P.M.L.) (transferring 8 actions in West Virginia federal court and 3 actions in Ohio federal court notwithstanding pending remand motions); JPML Dkt. No. 368 (transferring an action in New Mexico federal court with a pending remand motion).

The JPML also recently noted, in transferring a wrongful death case to the MDL, that objections to transfer on the basis of jurisdictional arguments are "not an impediment to transfer" because "Defendants (and plaintiff, who has moved to remand the action to state court) can present their jurisdictional arguments to the transferee judge at the appropriate time."  JPML Dkt. No. 656.

This Court should follow the "general rule" and the MDL Court's stated preference for treatment of these cases and issue a stay of the entire case pending a decision by the JPML on transfer of the case to the MDL Court.

> **B.** **Plaintiff Will Not Be Prejudiced Because Remand is Not "Inevitable" and There Is No Indication a Stay Will Cause Significant Delay.**

Plaintiff does not claim that a transfer to the MDL would ***deny*** it the opportunity to seek remand to state court.  Rather, Plaintiff claims prejudice based on a ***mere delay*** of the "clearly inevitable" determination that no federal question jurisdiction exists, citing *Beshear v. Volkswagen Group of America*, 2016 WL 3040492, at *1.  But *Beshear v. Volkswagen*—a case brought by the ***same plaintiff*** making the ***same arguments*** regarding the ***same jurisdictional issue***—held ***precisely the opposite***:  that remand was ***not*** "inevitable" and the Commonwealth would not be prejudiced by a stay.  That *Beshear* case related to an MDL arising out of allegations that Volkswagen installed illegal "defeat devices" to avoid detection and enforcement of federal emissions regulations, and then sold those vehicles as purportedly "clean diesel" vehicles despite their noncompliance with applicable federal standards.  *Id.* at *1.  Plaintiff filed that case in Franklin County Circuit Court alleging claims based on Kentucky tort law and the Kentucky Consumer Protection Act and disclaiming reliance on any federal law.  *Id.* at *1–2.  There, as here, defendants removed based on federal question jurisdiction, arguing that Plaintiff's state law claims were based upon alleged violations of federal emissions standards and that liability therefore turned on the meaning of terms in the Clean Air Act.  *Id.* at *3.  Following

6

a lengthy "preliminary assessment" of the jurisdictional issue, the court concluded that "Defendants can make reasonable arguments that there is a substantial and disputed federal issue," *id.* at *5, and that the jurisdictional question was "difficult." *Id.* at *6.[2] In light of "the court system's interest in judicial economy, fairness, and consistency," the court held that a "stay [was] appropriate pending a final ruling from the JPML, which is in the best position to determine whether this case ultimately should be transferred." *Id.* *8.

The court's analysis and holding aligned with numerous other district courts confronting simultaneous motions to stay and remand. *See, e.g.*, *Lafoy*, 2016 WL 2733161, at *5 ("Defendant does not clearly lack federal question jurisdiction, and the interests of judicial economy require the stay of the motion to remand pending a transfer to MDL[.]"); *Meyers*, 143 F. Supp.2d at 1053 (granting stay where federal question jurisdiction was "not an easy call"); *Bd. of Trustees of Teachers Ret. Syst.*, 244 F. Supp.2d at 903 (granting stay where motion to remand "raises thorny questions of law"). One district court noted that "the majority of the cases presenting [jurisdictional] issues other than procedural matters in the remand motion were considered to present factually or legally difficult issues," and were stayed pending possible transfer to the MDL. *Oregon, ex rel. Kroger*, 2011 WL 1347069, at *4.

Like *Beshear v. Volkswagen*, this case presents a complex jurisdictional question. As explained in Cardinal Health's Notice of Removal,[3] although Plaintiff ostensibly pleads state law claims, the underlying theory of liability is expressly premised on Cardinal Health's alleged

---

[2] One court noted that a review of cases applying a similar analysis "reveals that the majority of the cases presenting issues other than procedural matters in the remand motion were considered to present factually or legally difficult issues." *Oregon, ex rel. Kroger v. Johnson & Johnson*, 2011 WL 1347069, at *3 (D. Or. Apr. 8, 2011).

[3] Absent a ruling on its Motion to Stay, Cardinal Health will file an opposition to Plaintiff's Motion to Remand by April 19, 2017.

violations of the federal Controlled Substances Act ("CSA") and its implementing regulations. Notice of Removal, ECF No. 1, ¶ 24. Plaintiff acknowledges that the CSA creates a "'closed' chain of distribution" specifically designed by Congress to prevent the type of diversion alleged in this case and establishes a "unified approach" to control of potentially dangerous narcotics. *Id.* ¶ 33. Plaintiff's theories of liability thus involve aspects of a complex national regulatory scheme of great significance to the development of a uniform body of controlled substances regulations. *Id.* ¶ 34. This is precisely the issue typically deemed sufficiently "difficult" and "legally and factually complicated" to require uniform resolution by the MDL Court. *See Beshear*, 2016 WL 3040492, at *6; *Kroger*, 2011 WL 1347069, at *5.

*The State of West Virginia v. McKesson Corporation*, Case No. 2:17-cv-03555, ECF No. 21 (S.D. W.Va. Feb. 15, 2018) is not to the contrary. There, defendant's alleged duties regarding monitoring, reporting, and halting shipments of suspicious orders arose not only out of DEA regulations and policy, but also out of an ***independent*** West Virginia regulation requiring registrants to "design and operate a system to disclose to the registrant suspicious orders of controlled substances" and "inform the Office of the Board of suspicious orders when discovered by the registrant." W. Va. C.S.R. 15-2-4.4. Based on that regulation, the court could not conclude that "every legal theory supporting plaintiffs' claims requires resolution of whether federal law . . . created a duty to refuse to ship suspicious orders," because plaintiffs could allege a duty arising solely out of West Virginia's suspicious order regulations. *West Virginia v. McKesson*, ECF No. 21 at 13 n.3. The Kentucky Controlled Substances Act, by contrast, contains ***no*** independent requirements relating to monitoring, reporting, or stopping shipment of suspicious orders. In this case, any such duty would arise solely out of federal law.

Nor has the MDL Court "already clearly expressed its lack of jurisdiction over the attorneys general." Commonwealth's Response in Opposition to Defendants' Motion to Stay, ECF No. 6, at 6 ("Opp'n"). The MDL Court's February 27, 2018 Order Regarding State Court Coordination merely stated the obvious: that the federal MDL Court has no jurisdiction over cases pending before state courts. Order Regarding State Court Coordination, ECF No. 146, *In re Nat'l Prescription Opiate Litig.*, Case No. 1:17-md-02804-DAP (N.D. Ohio Feb. 27, 2018) ("MDL Coordination Order"). The court did not address, let alone disclaim, its ability to exercise jurisdiction over a case brought by an attorney general where, as here, the complaint had been removed to federal court on the basis of federal question jurisdiction. Nothing in the MDL Court's order can reasonably be read to suggest an intent to overrule decades of Supreme Court federal question jurisprudence through a discussion about coordinating ongoing settlement negotiations.[4]

Plaintiff offers three other arguments as to why it would be prejudiced, none of which is persuasive. First, there is no indication that a stay would "indefinite[ly] pause" the resolution of jurisdictional issues, Opp'n at 4, as the MDL Court has explicitly stated its intent to rule on motions to remand. *See* MDL Remand Order. Second, there is no reason to believe a stay would "postpone[] resolution of this case as a whole." Opp'n at 5. To the contrary, the MDL court is "currently dedicating its efforts toward achieving a global settlement of all opioid litigation."

---

[4] Nor does the purportedly "unique stature" of this case as an "enforcement action filed by the Attorney General of Kentucky, on behalf of the people of Kentucky," Opp. at 1, affect the analysis of the propriety of staying these proceedings. A Kentucky federal court rejected a similar argument (made by the same attorney general) in *Beshear v. Volkswagen Group of America,* 2016 WL 3040492, at *6 (W.D. Ky. May 25, 2016). There, as here, the claim was predicated on "necessarily federal standards" that were "at least *factually* similar" to the other cases pending in the MDL. *Id.* The "possibility of imposing different state law remedies for the same behavior," through state court cases brought by state attorneys general across the country, "emphasizes the need for consistency in this matter, which is yet another reason the MDL court is in the better position to decide these issues." *Id.*

MDL Coordination Order. The MDL Court has issued a case management order setting a schedule for briefing common legal issues and for initial discovery and to create a process for bellwether trial selections. Case Management Order One, ECF No. 232, *In re Nat'l Prescription Opiate Litig.*, Case No. 1:17-md-02804-DAP (N.D. Ohio Apr. 11, 2018). Consolidation of cases within that proceeding will facilitate the ongoing settlement discussions (in which the Kentucky Attorney General is already participating), potentially hastening the resolution of this case. Finally, there is no basis for Plaintiff's suggestion that a brief stay to allow this case to be transferred to the MDL Court will result in "more Kentuckians d[ying] from the drugs that Defendants distributes and overdistributes." Putting aside the fact that such inflammatory comments presume liability before any has been proven, as mentioned, Cardinal Health is actively involved with the MDL Court and with state Attorneys General—discussions in which the Kentucky Attorney General is involved—regarding potential prospective measures that could be taken to help combat the nationwide opioid epidemic. These discussions will continue whether or not this case is stayed.

### C. Denial of the Stay Would Cause Hardship by Forcing Cardinal Health to Waste Resources and Risking Inconsistent Decisions.

By contrast, not entering a stay would cause substantial hardship for Cardinal Health. If the case is not stayed, then Cardinal Health, the State, and the court will be forced to waste resources litigating this case in this jurisdiction.

Plaintiff claims that Cardinal Health will suffer no hardship because "[t]his is the only case against Defendants that this, or any court, will address that has been brought by the Commonwealth through the Attorney General." Opp'n at 6. Thus, there is no threat of inconsistent rulings "due to the uniqueness of the Plaintiff." *Id.* First, it is disingenuous of Plaintiff to claim that "[t]his is the only case against Defendants that will present this 'exact

jurisdictional question.'" *Id.* Plaintiff has filed two identical suits against the other two major distributors, at least one of which will present this "exact jurisdictional question" to the MDL Court. *See* Notice of Removal, ECF No. 1, *Commonwealth of Kentucky ex rel. Beshear v. McKesson Corp.*, No. 3:18-cv-00010-FGVT (E.D. Ky. Feb. 23, 2018); McKesson Stay Order at 3.[5] That issue is no different in McKesson's than Cardinal Health's case.

Second, nearly every plaintiff that has sued Cardinal Health can claim that its suit "is the only case against Defendants that this, or any court, will address that has been brought by" that plaintiff. Opp'n at 6. Only one case will be brought by Jefferson County, or Floyd County, or Pike County. The operative question is whether the cases are ***factually similar*** and pose ***common legal questions***, *Beshear v. Volkswagen*, 2016 WL 3040492, at *6, which they undoubtedly do.[6] Most importantly, in addition to Plaintiff's identical suit against McKesson, identical arguments regarding federal jurisdiction have already been made in at least two other cases pending transfer to the MDL, with the possibility of more to come. "Consistency and economy is [] served" by having the jurisdiction objection "heard and resolved by a single court," *Royal Park Investments*, 941 F. Supp.2d at (quoting *Ivy v. Diamond Shamrock Co.*, 901 F.2d 7, 9 (2d Cir. 1990), particularly in a case like this one, where the risk of inconsistent rulings "appears genuine given the difficulty of the jurisdictional issues presented." *Bd. of Trustees*, 244 F. Supp.2d at 905 (acknowledging burden caused by the "risk of inconsistent rulings"). Courts routinely find that the "threat of inconsistent rulings outweighs the prejudice to the funds from delay." *Id.* at 906; *see also, e.g., Beshear v. Volkswagen*, 2016 WL 3040492, at *8 ("the interests

---

[5] The deadline for Amerisource Bergen to file its notice of removal has not yet passed.

[6] The JPML's first transfer order describes the actions before the MDL as involving "cities, counties, and states that allege that . . . distributors failed to monitor, detect, investigate, refuse and report suspicious orders of prescription opiates." Transfer Order, ECF No. 1 at 1, Case No. 1:17-md-02804-DAP (N.D. Ohio Dec. 12, 2017).

of judicial economy and the threat of inconsistent rulings outweighs any potential prejudice to the Commonwealth"); *Kroger*, 2011 WL 1347069, at *7 ("the interest of judicial economy and consistency far outweigh any possible harm to Plaintiff resulting from a brief stay").

> D. **A Stay Would Serve Judicial Economy by Consolidating Cases for Uniform Resolution by the MDL.**

Finally, given the "court system's interest in judicial economy, fairness, and consistency," there is no question that judicial economy would be served by staying these proceedings pending the JPML's transfer decision. *See Beshear v. Volkswagen*, 2016 WL 3040492, at *8; *see also Fox*, 2011 WL 6057509, at *1 ("[J]udicial economy is served by a stay pending transfer if the issues involved in the remand motion are likely to arise in the cases that have been or will be transferred to the MDL court."). Similar arguments regarding federal question jurisdiction have already been made in at least four other actions. One of those actions has already been transferred to the MDL. *See* Transfer Order, ECF No. 221 at Sched. A, No. 1:17-md-02804 (N.D. Ohio Apr. 5, 2018) (transferring *City of Paterson v. Purdue Pharma., L.P.*, C.A. No. 2:17-13433). Two other actions, Plaintiff's suit against McKesson and a suit against opioid manufacturers brought by the Attorney General of Montana, have already been stayed pending the JPML's decision on plaintiffs' oppositions to its Conditional Transfer Orders. McKesson Stay Order at 3;[7] *State of Montana v. Purdue Pharma, L.P.*, ECF No. 20, No. 3:18-cv-00033 (D. Mont. Mar. 6, 2018). Motions to remand have been fully briefed and await

---

[7] Plaintiff's allegations against McKesson are nearly identical to its allegations against Cardinal Health. In deferring decision on Plaintiff's motion to remand the *McKesson* case, the court noted that "[t]his case is similar to the approximately twenty additional cases brought before this Court, suing the manufacturers and distributors of opioid prescription medications[.]" McKesson Stay Order at 1. The court found that the case "is likely to be consolidated with *In re Nat'l Prescription Opiate Litig.*" because Plaintiff "nam[ed] one of the same defendants and alleg[ed] the same set of complaints." *Id.* at 1, 3. Deferral of the motion for remand was "appropriate" because "Judge Polster has indicated his desire to address motions to remand collectively." *Id.* at 3.

decision in a suit brought against numerous distributors (including Cardinal Health) by the Attorney General of Delaware. Opening Br. in Supp. of Delaware's Motion to Remand, ECF No. 5, *State of Delaware ex rel. Denn v. Purdue Pharma, L.P.*, No. 1:18-cv-383 (D. Del. Mar. 13, 2018). As in *Volkswagen*, "other such cases could potentially be brought in every state where Defendants [distributed opioids]." *Beshear v. Volkswagen*, 2016 WL 3040492, at *6. "The possibility of imposing different state law remedies for the same behavior emphasizes the need for consistency in this matter," which is why the MDL court is better positioned to decide these jurisdictional issues. *Id.*

This Court will not retain jurisdiction of this case whether it is remanded to state court or remains in federal court and is transferred to the MDL. The JPML has already decided that the factually and legally similar opioid actions—of which there are now more than 600 in the United States—should be consolidated and handled by a single federal judge. That determination is undermined if other federal courts across the country start adjudicating these cases individually before the MDL process is allowed to work. Judicial economy is therefore best served by staying this case so that the MDL Court can consider these complicated jurisdictional issues for the entirety of the cases.

### E. In the Alternative, the Court Should Stay All Deadlines Except for Briefing on the Motion to Remand.

In light of the unnecessary hardship and waste of judicial resources the current deadlines would impose on Cardinal Health, if the Court declines to grant in full Cardinal Health's motion to stay proceedings pending the JPML's transfer order, Cardinal Health respectfully requests that the Court enter an Order staying all deadlines other than those relating to Plaintiff's Motion to Remand, and to extend the deadline for Cardinal Health to answer, move, or otherwise respond to Plaintiff's Complaint to thirty days following the Court's decision on Plaintiff's Motion to

Remand, unless otherwise ordered by the Court. Staying all other deadlines will not prejudice Plaintiff, which has taken the position that this Court has no jurisdiction to adjudicate this case.

Dated this the 12th day of April, 2018.

        Respectfully submitted,

        /s/Steven B. Loy
        Steven B. Loy
        Perry M. Bentley
        Monica H. Braun
        Stoll Keenon Ogden PLLC
        300 West Vine Street, Suite 2100
        Lexington, KY 40507-1801
        Telephone: (859) 231-3000
        Fax: (859) 253-1093
        steven.loy@skofirm.com
        perry.bentley@skofirm.com
        monica.braun@skofirm.com

        Enu Mainigi*
        F. Lane Heard*
        Ashley W. Hardin*
        **WILLIAMS & CONNOLLY LLP**
        725 Twelfth Street, N.W.
        Washington, DC 20005
        Telephone: (202) 434-5000
        Facsimile: (202) 434-5029
        emainigi@wc.com
        lheard@wc.com
        ahardin@wc.com

        *\* denotes national counsel who will seek pro hac vice admission*

        *Attorneys for Defendants Cardinal Health 5, LLC; Cardinal Health 108, LLC; Cardinal Health 110, LLC; Cardinal Health 113, LLC; Cardinal Health 132, LLC; Cardinal Health 200, LLC; Cardinal Health 414, LLC; and The Harvard Drug Company, LLC, d/b/a Major Pharmaceuticals, d/b/a Rugby Laboratories*

**CERTIFICATE OF SERVICE**

       I hereby certify that on April 12, 2018, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which shall automatically serve all designated CM/ECF participant counsel of record. The following attorney was served by U.S. Mail, postage prepaid on April 13, 2018:

    Charles W. Rowland
    Commonwealth of Kentucky
    Office of the Attorney General
    Office of Consumer Protection
    1024 Capital Center Drive, Suite 200
    Frankfort, Kentucky 40601
    *Attorneys for Plaintiff*

                                  /s/Steven B. Loy
                                  *Counsel for Defendants*